**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CURTIS MARTEL JACKSON,

      Petitioner,               Civil No. 2:13-CV-12193
                                      HONORABLE NANCY G. EDMUNDS
v.                            UNITED STATES DISTRICT JUDGE

CURTIS PALMER,

      Respondent,
_____/

**OPINION AND ORDER RESCINDING THE ORDER OF REFERENCE TO THE
MAGISTRATE JUDGE, DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO
APPEAL IN FORMA PAUPERIS**

Curtis Martel Jackson, ("petitioner"), confined at the Michigan Reformatory in Ionia,

Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In

his application, filed by attorney Sanford A. Schulman, petitioner challenges his conviction

for second-degree murder, M.C.L.A. 750.317; felon in possession of a firearm, M.C.L.A.

750.224f; and felony firearm, M.C.L.A. 750.227b.   For the reasons stated below,

petitioner's application for writ of habeas corpus is **DENIED.**  The Court will also rescind the

Order of Reference to United States Magistrate Judge. [1]

**I. Background**

Petitioner was originally charged with first-degree murder, felon in possession of a

firearm, and felony-firearm.  Following a jury trial in the Wayne County Circuit Court,

---

[1]  The Court signed an Order of Reference to United States Magistrate Judge dated September
15, 2014.  The Court is rescinding the order in light of the fact that Magistrate Judge Paul J. Komives
retired from the United States District Court for the Eastern District of Michigan effective January 6, 2015.

1

petitioner was convicted of the lesser included offense of second-degree murder and guilty as charged of the other two offenses.

On the morning of December 29, 2009, petitioner was driving with his ex-girlfriend Valeria Anderson when they stopped to chat with a friend of petitioner's named Christoper Little. While they were talking, petitioner noticed a van driving towards them and asked Mr. Little, "was that Gaylin's bitch ass?" Little responded affirmatively. Petitioner ordered Little to drive off. Petitioner pulled his vehicle next to Gaylin Williams' van. When Mr. Williams extended his hand out to greet petitioner, petitioner pointed a gun at Williams and shot him several times, right in front of Ms. Anderson. The victim was unarmed. After the shooting, petitioner drove to a friend's house where he disposed of the murder weapon. Mr. Williams was later found slumped over in his van. The victim was taken to the hospital, where he subsequently died.

The sole eyewitness at petitioner's trial was Valeria Anderson. Ms. Anderson at first did not tell anyone about the murder. Eventually, Anderson and petitioner broke up. Petitioner threatened Anderson that he would have his friends shoot up her house or burn it down if she told anyone about the shooting. Petitioner's girlfriend and brother also made threats to Anderson about what would happen to her if she incriminated petitioner. Petitioner also physically assaulted Ms. Anderson, stalked her at home, and stole her cell phone. Anderson's house was firebombed shortly after petitioner had threatened to burn it down.

Petitioner presented an alibi defense at trial.

Petitioner's conviction was affirmed on appeal. *People v. Jackson,* No. 298676, 2012 WL 104745 (Mich.Ct.App. January 12, 2012); *lv. den.* 491 Mich. 922, 812 N.W.2d 757

(2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Counsel was ineffective based upon the following omissions:

a. Counsel's failure to request the definition of great bodily harm in the second-degree murder intent instruction; and

b. Counsel's failure to request a curative instruction regarding the uncharged offenses of unarmed robbery, arson, and breaking and entering.

II. The admission of parts of the non-testifying witness statement of Christopher Little denied Jackson his right to confrontation.

III. The cumulative effect of counsel's omissions denied Jackson a fair trial.

IV. Jackson was denied a fair trial by the admission of other bad acts evidence against him that was substantially more prejudicial than probative and did not comport with Mich. R. Evid. 404(b).

V. The trial court erred by not sua sponte declaring a mistrial after defense counsel deliberately elicited evidence that Jackson committed two other separate murders.

VI. Prosecutorial misconduct throughout the trial and during closing arguments violated Jackson's right to due process of law.

VII. A miscarriage of justice occurred in this case where Jackson was denied his right to effective assistance of counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).

4

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

5

**A.  Claims # 1-3.  The ineffective assistance of counsel/Confrontation Clause claims.**

The Court will consolidate petitioner's first three claims together because they are interrelated.  In his first claim, petitioner contends that trial counsel was ineffective for failing to request a definition of the term great bodily harm in the trial court's instruction on the lesser included offense of second-degree murder and for failing to request a limiting or cautionary instruction regarding the uncharged offenses of unarmed robbery, arson, and breaking and entering.  In his second claim, petitioner contends that his right to confrontation was violated by the admission of a non-testifying witness' statement to the police and that trial counsel was ineffective for failing to object to this violation.  In his third claim, petitioner contends that he is entitled to habeas relief based on the cumulative effect of the ineffective assistance of counsel issues raised in his first and second claims.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional

6

errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

"*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788

7

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" almost five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In his first claim, petitioner initially contends that trial counsel was ineffective for failing to request that the trial judge define the term "great bodily harm" in the second-degree murder instruction. The Michigan Court of Appeals rejected petitioner's claim:

Defendant was not denied effective assistance of counsel when defense counsel failed to request a jury instruction defining the term great bodily harm of second-degree murder. First, the trial court was under no obligation to define great bodily harm. As this Court explained in *People v. Martin*, 271 Mich.App 280, 352; 721 NW2d 815 (2006), "when a word is not defined by statute, this Court presumes that the word is subject to ordinary comprehension," and a trial court's decision not to define that word for the jury does not constitute an error requiring reversal. The term great bodily harm is a phrase that the jury could define properly on its own, defendant is unable to illustrate that the failure to provide the definition had any effect on the verdict. Further, the defendant is unable to demonstrate that defense counsel acted objectively unreasonable. A defense counsel's decisions regarding jury instructions can be a matter of trial strategy. *People v. Rice*,

8

235 Mich.App 429, 444–445; 597 NW2d 843 (1999); *People v. Armstrong*, 124 Mich.App 766, 769; 335 NW2d 687 (1983). Thus, defense counsel may have made a strategic decision to avoid focusing the jury's attention on the harm aspect of the crime, as a way of emphasizing to the jury that regardless of what happened to Gaylin, defendant had nothing to do with the crime and instead had a complete alibi. Regardless of the exact nature of defense counsel's strategic thinking, "this Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v. Rockey*, 237 Mich.App 74, 76–77; 601 NW2d 887 (1999). Furthermore, defendant is unable to establish that but for this alleged error, the outcome of the trial would have been different.

*People v. Jackson,* No. 2012 WL 104745, Slip. Op. at * 7.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).

Petitioner is not entitled to relief on this claim. The Michigan Court of Appeals correctly noted that "great bodily harm" is a common term that could be easily understood by the jurors. The Sixth Circuit has held that "[a] trial court 'need not define familiar English words when the jury can appreciate their meaning without special knowledge.'" *U.S. v. Lentsch,* 369 F. 3d 948, 954 (6th Cir. 2004)*(quoting U.S. v. Mack*, 159 F. 3d 208, 218 (6th Cir. 1998)). Trial counsel is not ineffective for failing to object to jury instructions that are correct. *See Campbell v. Coyle,* 260 F. 3d 531, 557 (6th Cir. 2001). Because the

instruction as given on the elements for second-degree murder was adequate, counsel's failure to object was not objectively unreasonable, and petitioner cannot show that a different instruction would likely have changed the outcome of his trial as to entitle him to habeas relief on his claim. *See Jacobs v. Sherman,* 301 Fed. Appx. 463, 466-67 (6th Cir. 2008).

Petitioner is also not entitled to habeas relief on this claim because counsel may have made a strategic decision to avoid emphasizing the great bodily harm element of the lesser included offense of second-degree murder in the hope that the jury would acquit petitioner based on his alibi defense rather than compromise and convict him of the lesser offense. *See e.g. Lewis v. Russell,* 42 Fed. Appx. 809, 810-11 (6th Cir. 2002)(trial counsel's failure during murder trial to request jury instruction on lesser-included offense of voluntary manslaughter constituted reasonable strategic decision consistent with defendant's effort to seek full acquittal on basis of self-defense, and thus did not constitute deficient performance); *Edwards v. Mack,* 4 Fed. Appx. 215, 217-18 (6th Cir. 2001)(counsel's waiver of jury instructions on lesser-included offenses was not ineffective assistance, where defendant did not want jury instructed on lesser included offenses, but instead hoped to obtain an acquittal by having jury instructed on the murder charge only).    Petitioner next contends that trial counsel was ineffective for failing to request a limiting instruction for the uncharged crimes of unarmed robbery, arson, and breaking and entering.

Petitioner is not entitled to relief on this claim for several reasons.

First, trial counsel's decision not to request limiting instructions may have been perfectly sound from a tactical standpoint, because "[S]uch instructions inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize...". *See*

10

*Ferguson v. Knight,* 809 F. 2d 1239, 1243 (6th Cir. 1987). *See also Ashe v. Jones,* 208 F. 3d 212 (Table); 2000 WL 263342, at *6 (6th Cir. February 29, 2000)(unpublished opinion)(stating that counsel may have decided, as part of a reasonable trial strategy, not to request an instruction limiting the jury's consideration of the prior bad acts evidence based on the belief that such an instruction would bring undue attention to the other acts*);Stamps v. Rees*, 834 F. 2d 1269, 1276 (6th Cir. 1987)(failure to request jury admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that ... counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"). Although petitioner's counsel did request and receive a cautionary instruction regarding evidence that petitioner had committed two uncharged murders, counsel might nonetheless have chosen not to request a limiting instruction with respect to the other uncharged crimes so as to avoid bringing undue attention of them to the jury.

Petitioner is also not entitled to relief on this claim because the Michigan Court of Appeals ruled that the uncharged acts of unarmed robbery, breaking and entering, and arson were admissible under M.R.E. 404(b) to show petitioner's conciousness of guilt. *Jackson,* No. 2012 WL 104745, Slip. Op. at * 2-3. Because these threats were admissible, petitioner was not entitled to any limiting instruction. *Id.* at * 7.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that this evidence was admissible under Michigan law, this Court must defer to that determination in resolving petitioner's

11

ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003). In light of the fact that evidence of these uncharged crimes was admissible under 404(b), counsel's failure to request a limiting instruction was not ineffective. *See Jackson v. U.S.,* 248 F. Supp.2d 652, 657 (E.D. Mich. 2003). Petitioner is not entitled to habeas relief on his first claim.

In his second claim, petitioner claims that his Sixth Amendment right to confrontation was violated by the admission of Christopher Little's out-of-court statement to Detective Simon, because Little did not testify at the trial. Petitioner further contends that trial counsel was ineffective for failing to object to the Confrontation Clause violation.

Respondent contends that petitioner's Confrontation Clause claim is procedurally defaulted. Petitioner claims that his trial counsel was ineffective for object to the violatin of his right to confrontation. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

Detective Barbara Simon testified that she became aware of Christopher Little during the investigation of the murder, interviewed him at the jail, and obtained a statement from him. The police had since been unable to locate Mr. Little. (Tr. 5/6/10, pp. 47-48). Detective Simon did not reveal the contents of Little's statement to her on direct examination.

On cross-examination, Detective Simon testified that Little told her that he did not

12

see the shooting and only heard shots as he pulled away from the scene. (*Id.*, p. 58).

On re-direct examination, Detective Simon testified that Little told her the names of the persons present right before the shooting.  Detective Simon did not reveal the names of the persons identified by Little. (*Id.* at pp. 59-60).

The Michigan Court of Appeals rejected petitioner's claim on the grounds that Little's statement was not admitted to prove the truth of the matter asserted but only came in after defense counsel attempted to discredit Detective Simon's testimony that Little played any role in her investigation, since Little did not actually see the shooting. *People v. Jackson,* No. 2012 WL 104745, Slip. Op. at * 1.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36, 68-69 (2004).  However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.,* at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement).

Courts have noted that "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F. 3d 479, 486-87 (6th Cir. 2007)(*quoting United States v. Martin*, 897 F. 2d 1368, 1371 (6th Cir.1990)).  Evidence

13

that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See U.S. v.Warman,* 578 F. 3d 320, 346 (6th Cir. 2009)(*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

In the present case, Detective Simon's testimony concerning Little's identification of the parties did not violate the Confrontation Clause because it was not offered to prove the truth of the matter asserted but was offered for the nonhearsay purpose of rebutting defense counsel's suggestion that Little could not have played a role in the detective's investigation of the murder, because he did not actually see the shooting.  Moreover, Detective Simon never revealed the contents of Little's statement to her, other than to state that he identified the parties who were present before the shooting.  Detective Simon, however, did not state who Little identified as the parties present during the shooting, thus, her testimony did not violate petitioner's right to confrontation.  Indeed, "testimony that does not reveal any specific statement made by a confidential informant (or other nontestifying declarant) and merely provides background information regarding the course of investigation does not violate the Confrontation Clause." *U.S. v. Pugh,* 273 Fed. Appx. 449, 455 (6th Cir. 2008); *See also Cromer*, 389 F.3d at 676-77 (testimony of officer that he "had information" about drug dealing that occurred at a particular address was permissible as background information even though the jury could link that address to the defendant); *Gibbs*, 506 F. 3d at 486-87(agent's testimony that parolee told him that defendant, who was charged with being felon in possession of firearms, had long guns hidden in his bedroom, was not hearsay, but instead was offered as background evidence

14

to show why defendant's bedroom was searched, and was not offered for its truth, since it did not bear on defendant's alleged possession of pistol with which he was charged.). Accordingly, the petitioner is not entitled to habeas relief on this claim.

Because Detective Simons' testimony about Christopher Little did not violate the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v. Johnson,* 581 F. 3d 320, 328 (6th Cir. 2009).

In his third claim, petitioner alleges that the cumulative nature of the errors that he complains about in his first and second claims deprived him of the effective assistance of counsel. Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000); *Alder v. Burt,* 240 F. Supp. 2d 651, 655 (E.D. Mich. 2003). Petitioner is not entitled to habeas relief on his first, second, or third claims.

### B. Claims # 4-7.  Petitioner's fourth through seventh claims are unexhausted and procedurally defaulted.

Respondent contends that petitioner's fourth through seventh claims are procedurally defaulted because petitioner failed to properly exhaust these claims by including these claims in the application for leave to appeal that he filed with the Michigan Supreme Court following the affirmance of his conviction by the Michigan Court of Appeals on his appeal of right.

A habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim raised in the state court of appeals but not in the state

15

supreme court cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Petitioner raised all seven of his claims in his appeal of right to the Michigan Court of Appeals. However, a review of the application for leave to appeal that petitioner filed with the Michigan Supreme Court following the affirmance of his conviction by the Michigan Court of Appeals shows that petitioner raised only his first three claims in his application for leave to appeal to the Michigan Supreme Court, but did not include his fourth through seventh claims. [2] By failing to seek discretionary review of his fourth through seventh claims in the Michigan Supreme Court, petitioner has procedurally defaulted these claims. *Harris,* 157 F. Supp. 2d at 750.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner

---

[2] *See* Application for Leave to Appeal to the Michigan Supreme Court, this Court's Dkt. Entry # 9-4.

16

to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has offered no excuse for his failure to raise his fourth through seventh claims in his application for leave to appeal with the Michigan Supreme Court. The fact that petitioner had to represent himself on his discretionary appeal with the Michigan Supreme Court would not excuse the default. A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). In a criminal proceeding in which a habeas petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *See Coleman*, 501 U.S. at 752-53. Because petitioner had no constitutional right to the effective assistance of counsel in filing an application for leave to appeal with the Michigan Supreme Court, the fact that petitioner did not have appellate counsel to help him file an application for leave to appeal would not establish the "cause" required to overcome the procedural default of petitioner's claims which he raised on his direct appeal with the Michigan Court of Appeals, but failed to raise in the Michigan Supreme Court. *See Harris v. Stegall,* 157 F. Supp. 2d at 750. In the present case, petitioner has offered no reasons for the Court to excuse the default of his claims. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his defaulted claims as a ground for a writ of habeas corpus. Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur

17

if the Court declined to review petitioner's fourth through seventh claims on the merits. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 828 (E.D. Mich. 2002).            Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his remaining claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's fourth through seventh claims and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner has failed to show that his procedurally defaulted claims have any merit.   In particular, the reasons justifying the denial of petitioner's claims were "ably articulated by the" Michigan Court of Appeals in their opinion affirming petitioner's conviction, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,* 328 Fed. Appx. 323, 324 (6th Cir. 2009).  Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

18

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

### V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Order of Reference to United

19

States Magistrate Judge dated September 15, 2014 [Dkt. # 10] is **RESCINDED.**

IT IS FURTHER ORDERED THAT the petition for a writ of habeas corpus is

**DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/ Nancy G. Edmunds
**HON. NANCY G. EDMUNDS**
UNITED STATES DISTRICT COURT

DATED: January 8, 2015